IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

|  |  |
|---|---|
| DANIEL O'TOOLE, RICHARD CHURCHILL, and KEITH LEONARD, individually and on behalf of all others similarly situated, | CV 21–89–M–DLC |
| Plaintiffs, | |
| vs. | ORDER |
| RAVALLI COUNTY, Defendant. | |

Before the Court is United States Magistrate Judge Kathleen L. DeSoto's

Findings and Recommendation ("F&R") regarding Defendant's Motion for

Summary Judgment (Doc. 100) and Plaintiffs' Cross-Motion for Partial Summary

Judgment (Doc. 97). (Doc. 125.) Judge DeSoto recommends that this Court grant

Defendant's Motion, deny Plaintiffs' Motion, and dismiss this case. (Doc. 125 at

63–64.) For the reasons herein, the Court ADOPTS the F&R IN PART and

REJECTS the F&R IN PART.

1

## FACTUAL BACKGROUND[1]

Montana's bail statute provides that, with the exception of cases in which a defendant has been charged with a crime that is punishable by death, "[b]efore a verdict has been rendered, the court shall . . . authorize the release of the defendant upon reasonable conditions that ensure the appearance of the defendant and protect the safety of the community or of any person." Mont. Code Ann. § 46-9-106(1). Courts "may impose any condition that will reasonably ensure the appearance of the defendant as required or that will ensure the safety of any person or the community." Mont. Code Ann. § 46-9-108(1).

Ravalli County, Montana ("the County") instituted its Jail Diversion Program in 2018 as a branch of the County Sheriff's Department. Justice court judges, district court judges, Sheriff Steve Holton, the Office of the Public Defender, and the County Attorney were all involved in creating the Jail Diversion Program. Through the Jail Diversion Program, the County provides jail diversion services to individuals ("supervisees") ordered by the Court to participate in pretrial services, such as drug and alcohol testing, GPS monitoring, and pretrial supervision, as a condition of release from jail. One of the goals of the Jail

---

[1] The facts set forth below consist of those facts which are undisputed or have been deemed substantively undisputed by the Court.

Diversion Program is reducing recidivism.

The only option for pretrial supervision is through the Jail Diversion Program. The Jail Diversion Program is self-funded; supervisees are charged a $105 monthly fee for supervision. This monthly fee may be reduced to as low as $25 per month in cases in which a supervisee receives Social Security Insurance or Social Security Disability Insurance. If a supervisee uses certain types of equipment, the monthly supervision fee can be brought down to $55 per month.

Supervisees assigned to pretrial conditions of release are typically assigned to drug and alcohol monitoring with pretrial supervision. The Jail Diversion Program allows supervisees assigned to conditions to satisfy those conditions using SCRAM[2] "CAM," "an ankle monitoring device that monitors the sweat off your skin 24/7"; SCRAM "Remote Breath, which requires breath at a scheduled time or times"; and/or "a GPS monitor, where you can track their movements." Each of these types of testing impose varying costs and requirements.

Supervisees are responsible for paying the cost of any court-ordered testing and monitoring. There is no financial assistance provided by the Jail Diversion Program. In the event a supervisee is unable to afford the supervision fees, they are

---

[2] SCRAM Systems provides alcohol and location monitoring devices for courts and agencies. https://www.scramsystems.com/ (last accessed May 30, 2025).

still responsible for payment of the fees. In cases where a supervisee's charges are ultimately dropped or their case is dismissed, the Jail Diversion Program fees are not reimbursed.

If the court does not order a specific type of testing, a supervisee may, with approval from Jail Diversion Program staff, choose between different types of testing. The cost of supervision varies depending on what type of testing is used. Urinalysis drug monitoring costs a supervisee between $40 and $120 per week. Drug patch testing costs a supervisee $204 per month, plus a one-time $75 administrative fee. Supervisees in the 24/7 Sobriety program are charged $112 per month for twice daily breathalyzers, and those participating in alcohol monitoring through the SCRAM program must pay roughly $300 per month in addition to a one-time $75 administrative fee. The Jail Diversion Program charges supervisees with GPS monitoring $390 per month, as well as a one-time $75 set up fee.

The three named Plaintiffs are former supervisees of the Jail Diversion Program. All three supervisees qualified for court-appointed counsel in their criminal proceedings. Plaintiff Daniel O'Toole was enrolled in the Jail Diversion Program for 20 months between January 2020 and August 2021 and incurred a total of $4,630 in pretrial supervision fees. Of the $4,630 in fees, O'Toole ultimately paid a total of $3,550. O'Toole absconded from pretrial supervision in

4

February 2021 while wearing a SCRAM CAM drug monitoring device. A Complaint was filed with the County Attorney for felony theft of the SCRAM bracelet, and O'Toole was rearrested on April 14, 2021. The court ordered that O'Toole be released on bail and remain in the Jail Diversion Program.

Plaintiff Richard Churchill was enrolled in the Jail Diversion Program for 11 months between December 2020 and November 2021. Churchill accumulated a total of $1,045 in supervision fees, of which he paid $825. Churchill was also enrolled in the Jail Diversion Program's drug testing services for five or six weeks and was permitted to pay what he could at that time. In February 2021, Churchill was arrested after a uranalysis resulted in a positive drug test. After posting bond, Churchill paid an unspecified amount of past-due Jail Diversion Program fees. In July 2021, Churchill tested positive for methamphetamine and missed two drug tests. Churchill claimed he was not permitted to take the two missed tests because he did not have the money to pay for them. Due to Churchill's missed tests, the Ravalli County Attorney's Office moved to revoke Churchill's release, and the court issued a warrant for his arrest.

The court ordered Plaintiff Keith Leonard to participate in pretrial supervision and alcohol monitoring. Leonard used the 24-7 sobriety program to fulfill his alcohol monitoring condition. At one point during the term of Leonard's

supervision, he requested that the court modify his conditions of release because he could not afford the 24/7 sobriety program; the court advised Leonard that it would consider removing the conditions if he could stay clean for 60 days. Leonard did not stay clean for 60 days and eventually stopped paying his Jail Diversion Program supervision fees. The Jail Diversion Program never issued Leonard a violation for failure to pay pretrial supervision fees, nor was Leonard arrested.

## RELEVANT PROCEDURAL BACKGROUND

Through Plaintiffs' Second Amended Complaint ("SAC")—now the controlling pleading—Plaintiffs allege nine causes of action. Count One alleges that "by charging Plaintiffs for pre-trial fees without any finding of guilt, Defendant[] deprive[d] Plaintiffs of their property without due process as guaranteed under the Fourteenth Amendment." (Doc. 34 ¶ 193.) Count Two alleges an additional violation of procedural due process for arbitrary bail. (*Id.* ¶ 195.) Count Three alleges cruel and unusual punishment in violation of the Eighth Amendment. (*Id.* ¶ 198.) Count Four alleges that "Defendant[] provides constitutionally deficient due process by assessing pre-trial fees without considering ability to pay." (*Id.* ¶ 201.) Count Five alleges that "Defendant[] effectively criminalize[s] poverty and incarcerate[s] pre-trial arrestees because of their inability to afford pre-trial fees," in violation of due process. (*Id.* ¶ 206.)

6

Count Six alleges a violation of equal protection for wealth-based discrimination. (*Id.* ¶ 210.) Count Seven alleges a violation of state equal protection for social condition discrimination. Specifically, Count Seven alleges that Defendant "discriminate[s] against pre-trial arrestees on the basis of social condition, namely, their indigency." (*Id.* ¶ 213.) Count Eight alleges false imprisonment. (*Id.* ¶ 217.) And finally, Count Nine alleges that Defendant coerces Plaintiffs into signing contracts before being released from jail, in violation of due process. (*Id.* ¶ 223.)

The SAC included district court judges, justices of the peace, and Sheriff Holton as Defendants. The Court previously dismissed the claims against those Defendants; the County is the sole remaining Defendant. (Docs. 78, 79.)

The County moved for summary judgment on all nine causes of action. (Doc. 100.) Plaintiffs filed a cross-motion for partial summary judgment as to liability on the procedural due process and equal protection claims set forth in Counts One, Two, Four, and Six. (Doc. 97.)

Judge DeSoto recommends this Court deny Plaintiffs' Partial Motion for Summary Judgment and grant Defendant's Motion for Summary Judgment. (Doc. 125 at 63.) Plaintiffs filed timely objections. (Doc. 126.) Surprisingly, Defendant did not respond to the objections.

7

## LEGAL STANDARDS

### I.    Objections to the F&R

Because Plaintiffs timely filed objections to the F&R, Plaintiffs are entitled to *de novo* review of those findings and recommendations to which they object. 28 U.S.C. § 636(b)(1)(C); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Absent objection, this Court reviews the Findings and Recommendation for clear error. *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed." *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000).

### II.    Summary Judgment

The Court can resolve an issue summarily if "there is no genuine dispute as to any material fact" and the prevailing party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine when there is sufficient evidence for a reasonable factfinder to return a verdict for the other party. *Id.* If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue of fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 586 (1986). With these principles in mind, the Court turns to the merits of the issues presented.

**DISCUSSION**

### I.    Defendant's Motion for Summary Judgment

#### A. Credibility Determinations

Plaintiffs contend that the F&R "makes three critical errors:" (1) "it improperly makes credibility determinations in favor of the moving Defendant rather than allowing the jury to resolve competing declarations about whether local judges reduce bail to account for pretrial supervision fees"; (2) "it improperly refuses reasonable inferences for the non-moving Plaintiffs while drawing inferences for the moving Defendant"; and (3) "it announces eight unsupported legal conclusions that depart from existing precedent." (Doc. 126 at 7.)

#### 1.  Municipal Liability Under *Monell*

The F&R concluded that Plaintiffs had "not provided evidence to support the inference that the County has a municipal custom, policy, or practice of requiring pretrial supervisees to pay Jail Diversion Program fees without considering ability to pay and incarcerating pretrial supervisees for nonpayment." (Doc. 125 at 63.) Plaintiffs object to this finding, arguing that "Defendant's policies and practices 'set in motion a series of acts' that Defendants know will ultimately inflict

9

constitutional injury." (Doc. 126 at 30.) Reviewing *de novo*, the Court agrees with Plaintiffs and sustains the objection.

Municipalities "can be found liable under [42 U.S.C.] § 1983 only where the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Vicarious liability does not attach under § 1983; rather, a municipality may only be held liable "when the 'execution of the government's policy or custom . . . inflicts the injury'" that forms the basis of the claim. *Id.* (quoting *Springfield v. Kibbe*, 480 U.S. 257, 267 (1987) (O'Connor, J., dissenting)). Under *Monell v. New York Department of Social Services*, 436 U.S. 658 (1978), a municipality is liable for a deprivation of constitutional rights when "there is a direct causal link between a municipal policy or custom and the alleged deprivation." *City of Canton*, 489 U.S. at 385. *Monell* covers written policies as well as unwritten "practices" that are so "well settled as to constitute a 'custom or usage.'" *Id.* at 398 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 168 (1970). As the Ninth Circuit has explained, "[t]he requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional

injury." *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978).

Here, as explained below, Plaintiffs have set forth evidence that they have experienced a deprivation in the form of monetary fees and incarceration. Further, Plaintiffs have provided evidence that Defendant's policies and practices set in motion a series of acts that lead to these alleged constitutional injuries.

For example, Plaintiffs provided undisputed evidence that the County has a policy of refusing release from jail if an individual cannot pay pretrial supervision fees in advance. Officer Fisher testified that "the alternative" to "pay[ing] for" Jail Diversion Program fees is "to stay in jail" and that the "option . . . to either stay in jail or pay the fee[s]" "[i]s not a great choice . . . but it's still a choice." (Doc. 104 ¶ 63.) Sheriff Holton testified that the Jail Diversion Program can "require[] individuals to pay the equivalent of one month [of fees] up front in order to be released [from jail]." (*Id.* ¶ 64.) Officer Jessop testified that "some people did have to pay their initial [Jail Diversion Program] enrollment fees before they would be allowed to be released from jail." (*Id.* ¶ 65.) Further, after Plaintiff O'Toole was rearrested on April 15, 2021, Lieutenant Colgan made a case note stating that O'Toole "NEEDS TO PAY the following to be released with Jail Diversion: $100 for CAM strap[,] $710 for past CAM fees[,] $355 for CAM/PTS fees[,] $140 for Drug Patch to be applied[,] $1500 CASH deposit for CAM to be re-assigned[,]

TOTAL: $2805." (*Id.* ¶ 71.) Based on this evidence, a reasonable jury could conclude that O'Toole's prolonged detention due to inability to pay was the County's policy.

The F&R determined that the above evidence was insufficient to establish policy, but as the Ninth Circuit has explained, a plaintiff may satisfy *Monell's* policy requirement by showing that a single act "was committed or ratified by an official with policy-making authority." *Scanlon v. Cnty. of Los Angeles*, 92 F.4th 781, 811–12 (9th Cir. 2024). Here, Sheriff Holton testified that "Jail Diversion [Program] policies are set solely by the Sheriff's Department." (Doc. 104 ¶ 135.)

### 2. Reduction of Bail for Fees (Count One)

Plaintiffs contend that the F&R "violates the rule that it 'may not make credibility determinations or weigh the evidence.'" (Doc. 126 at 7 (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000).) Specifically, Plaintiffs argue that the F&R credits the declarations of four Ravalli County judges that local judges reduce the amount of bail in light of pretrial service fees and the defendants' financial resources, while discounting Plaintiffs' competing declaration from a former Ravalli County judge and defense attorney. (Doc. 126 at 7.) According to Plaintiffs, because Defendant's declarations did not cite to a specific instance of reducing bail to account for pretrial supervision fees, and in

light of a conflicting declaration from a former Ravalli County judge and defense attorney, "a reasonable jury could conclude that Ravalli County judges do not reduce bail to account for pretrial supervision fees." (Doc. 126 at 7–8.)

Reviewing *de novo*, the Court agrees with Plaintiffs. In ruling on a motion for summary judgment, "the Court can neither determine the credibility of the witnesses nor place weight on competing evidence." *Kong v. Lopez*, 2019 WL 1751826, at *5 (C.D. Cal. Feb. 15, 2019) (citing *Banks v. Hayward*, 216 F.3d 1082, 1082 (9th Cir. 2000)). "Disputes caused by [] competing declarations cannot be resolved without credibility determinations, which are the function of the jury, not of a judge on a motion for summary judgment. *Id.*

In the underlying briefing, Defendant argued that there are adequate safeguards to protect supervisees' property and liberty. (Doc. 101 at 13.) Specifically, Defendant asserted that the Ravalli County District Court determines pretrial conditions at the defendant's initial appearance or arraignment. (*Id.*) Then, 90 days after the defendant's initial appearance, the court holds a bond review and reconsiders whether bail and pretrial conditions are appropriate moving forward. (*Id.*) Defendant largely relied on the declarations of District Court Judges Howard Recht and Jennifer Lint and Justice of the Peace Jennifer Ray and Jim Bailey, whom declared that they were "aware of the costs associated with pretrial

13

conditions and, pursuant to [their] duties under Montana's statutes, [they] take these into account when setting conditions and bail, including by reducing the amount of bail in light of pretrial service fees and the defendant's financial resources." (Docs. 49-1 ¶ 5; 49-2 ¶ 5.) The Judges further explained that they "assess the facts of each individual case and neutrally apply state law in assessing risk, ability-to-pay, and setting conditions of release and bail that are appropriate in light of the interests of the community and the arrestee." (Docs. 49-1 ¶ 7; 49-2 ¶ 7.) The Judges further declared that they asses the appropriateness of bail and conditions of release at a defendant's initial appearance, at the 90-day bond review hearing, upon conviction, upon revocation of release, and at any time when an issue with bail or conditions is brought to their attention. (Docs. 49-1 ¶ 8; 49-2 ¶ 8.)

Meanwhile, Plaintiffs relied on the competing declaration of licensed attorney Ryan Archibald. (Doc. 106-11.) Mr. Archibald attested that he had thousands of criminal cases go before Ravalli County courts. (*Id.* ¶ 8.) Mr. Archibald further attested that "[a]t initial arraignment hearings when bond was set and conditions and supervision were assigned, Jail Diversion Program fees were never brought up by the judges. The Jail Diversion Program fees would only be brought up at this hearing if I or the other defense attorneys in the room brought

14

them up." (*Id.* ¶ 14.) According to Mr. Archibald, the "Judges did not even mention—let alone analyze, calculate, or verbally consider—Jail Diversion Program fees when assessing bond amounts. The lack of any mention of Jail Diversion Program fees by judges made apparent that the fees did not impact bail determinations." (*Id.* ¶ 15.) Further, when setting bond and ordering conditions of release, the judges did not tell Mr. Archibald's clients nor specify through a written order how much the Jail Diversion Program fees would be. (*Id.* ¶¶ 16–17.)

The Court finds that these competing declarations evidence a genuine dispute as to material facts as they relate to Count One; therefore, Plaintiffs' objection is SUSTAINED and Defendant is DENIED summary judgment on this claim.[3] For the same reasons, Plaintiffs' motion for partial summary judgment as to liability on Count One is DENIED.

### 3.  Arbitrary bail and the *Mathews'* Test (Count Two)

The F&R found that "[b]ecause Plaintiffs have not presented evidence that Jail Diversion Program fees are the functional equivalent of bail, and the undisputed evidence demonstrates that pretrial supervisees have an opportunity to

---

[3] Plaintiffs raise several additional objections regarding the F&R's findings and conclusions as to Count 1; however, because the Court sustains Plaintiffs' first objection, it forgoes analysis of those additional objections as they relate to Count 1.

be heard at a meaningful time and in a meaningful manner on matters related to Jail Diversion Program fees, including ability to pay, Count 2 fails as a matter of law." (Doc. 125 at 45.)

Plaintiffs object, arguing that the F&R erroneously examined fees paid rather than fees charged in its analysis, despite undisputed evidence indicating that all remaining charges are incorporated into sentencing orders, and that Plaintiffs continued making payments after supervision had ended. (Doc. 126 at 24.) Plaintiffs further argue that the F&R announces an unsupported legal theory that a hearing on conditions amounts to an adequate hearing on ability to pay supervision fees. (*Id.* at 18.) Reviewing *de novo*, the Court agrees with Plaintiffs.

The F&R found that Plaintiffs did not present evidence that the Jail Diversion Program fees are the equivalent of bail. (Doc. 125 at 45.) However, that conclusion misplaces the testimony of Officer Fisher, Sheriff Holton, Officer Jessop, and Officer Stokes. Officer Fisher testified that "the alternative [to] pay[ing] for" Jail Diversion Program fees is to "stay in jail." (Doc. 98 ¶ 63.) Sheriff Holton and Officer Jessop both testified that the Jail Diversion Program can and does require people to pay fees in order to be released from jail where the court order required enrollment prior to release. (*Id.* ¶¶ 64, 65.) Officer Stokes testified that supervisees "would have to pay $465 before they could be set up with

16

the GPS for the first time" and "that would be above and beyond their bail amount." (*Id.* ¶ 67.) Lieutenant Colgan made a case note on April 19, 2021 that stated Plaintiff O'Toole—who was not assigned any condition prior to release nor assigned to GPS monitoring—was required to pay $2,805 in Jail Diversion Program fees "to be released." (*Id.* ¶ 71.) This evidence creates a genuine dispute of material fact as to whether the Jail Diversion Program fees are the functional equivalent of bail.

The F&R contends that any detention pending payment is not the result of a County policy, but rather the court's order requiring enrollment prior to release. However, it is undisputed that pretrial arrestees are assigned to the Jail Diversion Program during their arraignment hearing. (Doc. 104 ¶ 187.) Officer Fisher testified that "the court order" assigning arrestees to the Jail Diversion Program "does . . . [not] specify the fee[s]" and that she had "attended hearings where a judge orders enrollment [with the Jail Diversion Program] prior to release, but does not specify the fee in court." (*Id.* ¶¶ 188–89.) Officer Stokes testified that the times she attended arraignment hearings, the judge did not go over the fees in court. (*Id.* ¶ 190.) Officer Jessop testified that he did not believe that the judges explained the fees in court. (*Id.* ¶ 191.) Plaintiff Churchill's court order requiring him to "participate in the Ravalli County Jail Diversion Program as a condition

17

of . . . Bond or Pretrial Release" does not specify any Jail Diversion Program Fees. (*Id.* ¶ 192; Doc. 98-9 at 9.) This testimony refutes the F&R's finding that detention pending payment is the result of a court order.

The F&R's finding that supervisees are given a meaningful time and manner to be heard must also be rejected. The F&R supports its conclusion by highlighting the fact that local courts can modify conditions of release. (Doc. 125 at 39–40.) However, Plaintiffs' challenge in this case is to the fees charged, not the court-ordered conditions. And, as demonstrated above, there is evidence that suggests that the local courts do not order the fees at issue; the Jail Diversion Program does. This creates a genuine dispute of material fact as to Count Two. As such, Defendant's motion for summary judgment as to Count Two must be denied. For the same reasons, Plaintiffs' motion for summary judgment as to liability on Count Two must also be denied.

### 4.  Violation of Procedural Due Process: Ability to Pay (Count Four)

The F&R recommends that this Court grant Defendant's motion for summary judgment as to Count Four, which alleges that Defendant's failure to consider ability to pay in assessing pre-trial fees violates due process. (Doc. 125 at 47.) Plaintiffs object to the F&R, arguing that the F&R misconstrued the United States Supreme Court's holding in *Griffin v. Illinois*, 351 U.S. 12 (1956).

Reviewing *de novo*, the Court agrees with Plaintiffs.

In *Griffen*, the United States Supreme Court made it clear that while appellate review is not constitutionally required, a state cannot grant appellate review "in a way that discriminates against some convicted defendants on account of their poverty." 351 U.S. at 12. The *Griffen* Court explained that "to deny adequate review to the poor means that many of them may lose their life, liberty or property because of unjust convictions which appellate courts would set aside." 351 U.S. at 18. Count 4 of the Second Amended Complaint is based on *Griffen*, and the theory that due process requires states to waive certain fees for indigent defendants in criminal cases. (*See* Doc. 125 at 45.) The F&R concluded that "because Plaintiffs do not assert a fundamental liberty interest as the basis for their procedural due process claims, Griffin does not apply." (*Id.* at 46.)

Contrary to the F&R's assertion, the United States Supreme Court has applied *Griffin's* holding where there was no liberty interest at stake in a fine-only context. In *Mayer v. Chicago*, 404 U.S. 189, 198 (1971), the Supreme Court explained that "[t]he invidiousness of the discrimination that exists when criminal procedures are made available only to those who can pay is not erased by any difference in the sentences that may be imposed." The Court further explained that "[a] fine may bear as heavily on an indigent accused as forced confinement." *Id.* In

*M.L.B. v. S.L.J.*, 519 U.S. 102, 110 (1996), the Supreme Court reiterated that "*Griffin's* principle has not been confined to cases in which imprisonment is at stake." While the extent of the impact the fees in this case is a question of fact for the jury, Supreme Court precedent makes clear that protections awarded in *Griffin* are not limited to cases in which a fundamental liberty interest is at stake.

The F&R further asserts that "[t]o the extent Count 4 simply asserts that the County has a practice of asserting pretrial fees without considering ability to pay in violation of due process, Count 4 is duplicative of Count 1 and fails for all the same reasons." (Doc. 125 at 47.) Because this Court has rejected the F&R's findings as to Count One, and finds that *Griffin* is not confined to cases in which a fundamental liberty interest is at stake, the F&R's findings and recommendation as to Count Four must be rejected.

### 5. Violation of Procedural Due Process—Incarceration for Non-Payment of Fees (Count Five)

The F&R found that the County had provided undisputed evidence that it does not have a policy of incarcerating supervisees for failure to pay fees. (Doc. 125 at 49.) Specifically, the F&R determined that "the only consequence of non-payment of fees is that the County declines to provide services" and that "any additional consequences, such as the issuance of an arrest warrant or revocation of pretrial release, are imposed by the county attorney's office or the courts not the

County." (*Id.* at 37.) Based on these findings, Judge DeSoto concluded that the County is entitled to summary judgment on Count 5. (*Id.* at 50.)

Plaintiffs object, arguing that the F&R ignores Plaintiff's evidence that those who do not pay fees are denied testing, threatened with arrest, detained longer, and given longer sentencing recommendations. (Doc. 126 at 26.)

Reviewing *de novo*, the Court agrees with Plaintiffs and sustains the objection. The F&R credited local judge's assertions "that they will not revoke an order of release solely for the failure to pay pretrial fees," but this assertion is contradicted by other evidence in the record. For example, Sheriff Holton testified that pretrial supervisees who are removed from Jail Diversion services are technically in violation of bail conditions because they are "[n]not having whatever specific service they're required to have." (Doc. 104 ¶ 218.) Officer Stokes testified that when someone is removed from services and therefore "no longer in compliance with their conditions of bail" "it [is] possible that their bail would be revoked" and "they would go back to jail." (*Id.* ¶ 219.)

Officer Fisher testified that while she had "never seen a warrant based on nonpayment," she had "seen a warrant based on not providing a urinalysis as the court ordered." (*Id.* ¶ 227.) This is of course a distinction without a

difference, given the undisputed fact that "[p]retrial supervisees who do drug monitoring testing through urinalysis testing 'must provide payment for the [test] prior to submitting a [test] and can be refused service for failure to pay for the test, resulting in a missed test.'" (*Id.* ¶ 220.) And, crucially, "[t]he 24/7 Program's participant agreement [states], 'If you are on bond and you miss a test, YOU WILL GO TO JAIL.'" (*Id.* ¶ 233.)

Based on this evidence, the Court finds a genuine dispute of material fact as to Count Five; therefore, Defendant's motion for summary judgment must be denied as to this claim.

### 6. False Imprisonment (Count Eight)

Under Montana law, a successful false imprisonment claim requires the satisfaction of two elements: (1) the involuntary restraint of an individual; and (2) the unlawfulness of such restraint. *Hughes v. Pullman*, 36 P.3d 339, 343 (Mont. 2001). Judge DeSoto concluded that because "the undisputed evidence demonstrates that the County does not detain supervisees for failure to pay Jail Diversion Program fees," Plaintiffs' false imprisonment claim must fail. (Doc. 125 at 62.) Because this Court rejected the F&R's conclusion as to the County's policy of detaining supervisees for failure to pay fees, the F&R's findings and recommendation on Plaintiffs' false imprisonment claim must also be rejected.

### 7.  Cruel and Unusual Punishment (Count Three), Equal Protection (Counts Six and Seven), and Coercive Contracts (Count Nine)

Count Three of the SAC criminalizes homelessness in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. (Doc. 34 ¶ 198.)

Counts Six and Seven of the SAC allege equal protection claims under the United States Constitution and Montana's State Constitution. (*Id.* ¶¶ 209–10, 213–14.)

Count Nine of the SAC alleges that the County requires pretrial arrestees to sign coercive contracts "stating that they can be criminally charged with felony theft and criminal mischief if they do not maintain contact with the Jail Diversion officer of if they damage the devices they are required to use or wear, such as a GPS ankle monitor or an alcohol monitoring ankle device." (*Id.* ¶ 159.)

Neither Party objected to these findings. Reviewing for clear error, the Court finds none. As such, Defendant is granted summary judgment on Counts Three, Six, Seven, and Nine of the SAC.

### 8.  Quasi-Judicial Liability

The F&R found that Defendant was entitled to summary judgment because Plaintiffs could not establish an underlying constitutional violation nor provide evidence of a municipal custom, policy, or practice; therefore, the F&R does not

reach whether Defendant is entitled to quasi-judicial immunity. Since the existence or non-existence of immunity is crucial to how the Court proceeds in this case, the Court reviews the Parties arguments in the underlying briefing *de novo*.

In its brief in support of its motion for summary judgment, Defendant argues it is entitled to quasi-judicial immunity because "[p]ersons who execute facially valid court orders have absolute immunity for such actions." (Doc. 101 at 22.) According to Defendant, "[t]o the extent that the County is enforcing facially valid orders of the Ravalli County Courts, it is entitled to immunity for its actions. (*Id.*)

In response, Plaintiffs argue that Defendant does not have quasi-judicial immunity because Plaintiffs are not challenging the enforcement of any court orders. (Doc. 107 at 12.) Rather, according to Plaintiffs, they "only challenge Defendant's fees, which are set, controlled, imposed, and enforced solely by Defendant." (*Id.*)

The Court agrees with Plaintiffs. Lieutenant Colgan testified that "the fees are decided by Jail Diversion," "only Jail Diversion can adjust the fees," "the Jail Diversion Program decides when to charge fees and when not to charge fees," and judges "can't tell [the Program] how to charge for [their] services." (Doc. 103 ¶¶ 138–41.) Lieutenant Colgan further explained that the courts cannot reduce the fees "because it's not [the court's] lane. They can't tell us how to charge for the

24

same reason we can't tell McDonalds to serve hotdogs, it's just not their business." Further, Sheriff Holton testified that Jail Diversion Program policies are set and waived solely by the Sheriff's Department. (*Id.* ¶¶ 135-36.) As for fee reductions, Sheriff Holton testified that "[f]or any type of fee reduction," the Jail Diversion Program "would [not] have to clear that with the courts." (*Id.* ¶ 147.)

Based on this testimony, the Court concludes that the challenged actions here are not the result of a court order, and therefore, Defendant is not entitled to quasi-judicial immunity.

CONCLUSION

Accordingly, IT IS ORDERED that Judge DeSoto's F&R (Doc. 125) is ADOPTED IN PART and REJECTED IN PART. The F&R is adopted as to Counts Three, Six, Seven, and Nine. The F&R is rejected as to the remaining Counts.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Partial Summary Judgment (Doc. 97) is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (Doc. 100) is GRANTED IN PART and DENIED IN PART. Defendant is GRANTED summary judgment on Counts Three, Six, Seven, and Nine.

25

Defendant is DENIED summary judgment on all remaining Counts.

IT IS FURTHER ORDERED that the Parties shall appear telephonically on June 11, 2025 at 9:30 a.m. for a status and scheduling conference.[4]

DATED this 2nd day of June, 2025.

_____
Dana L. Christensen, District Judge
United States District Court

---

[4] The parties can access the Court's telephonic conference line by calling 833-990-9400 and entering Meeting ID 224538195.